UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SABRINA W.,[1]

                Plaintiff,

v.                                                             ACTION NO. 2:21cv37

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Sabrina W. ("plaintiff") filed this action for review of a decision by the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

An order of reference assigned this matter to the undersigned. ECF No. 10. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is recommended that plaintiff's motion for summary judgment, ECF No. 12, be **DENIED**, and the Commissioner's motion for summary judgment, ECF No. 14, be **GRANTED**.

---

[1] In accordance with a committee recommendation of the Judicial Conference, plaintiff's last name has been redacted for privacy reasons. Comm. on Ct. Admin. & Case Mgmt. Jud. Conf. U.S., Privacy Concern Regarding Social Security and Immigration Opinions 3 (2018).

## I. PROCEDURAL BACKGROUND

Plaintiff protectively applied for disability insurance benefits on October 29, 2018, alleging disability beginning September 21, 2018, due to osteoarthritis, back disorder, left foot disorder, right knee degenerative joint disease, obesity, and fibromyalgia.[2] R. 12–13, 66, 192, 212. Following the state agency's denial of her claim and denial on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 66–74, 77–89, 97–101, 104–05. ALJ Kerith Cohen heard this matter on May 11, 2020, and issued a decision denying benefits on June 2, 2020. R. 7–23, 34–65. On November 17, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision. R. 1–4. Therefore, the ALJ's decision stands as the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. §§ 405(h), 1383(c)(3); 20 C.F.R. § 404.981.

Having exhausted administrative remedies, plaintiff filed her complaint on January 18, 2021. ECF No. 1. After the Court granted an extension of time to file an answer, ECF No. 7, the Commissioner answered on June 2, 2021. ECF No. 8. In accordance with the Court's order, ECF No. 11, plaintiff and the Commissioner filed motions for summary judgment, with supporting memoranda, on July 6, 2021, and August 3, 2021, respectively. ECF Nos. 12–15. Plaintiff filed a reply on August 17, 2021. ECF No. 16. As no special circumstances exist that require oral argument, the case is deemed submitted for a decision.

## II. RELEVANT FACTUAL BACKGROUND

The sole issued presented in this matter concerns whether the ALJ properly explained her decision not to include cumulative limits on standing/walking and sitting in the residual functional capacity ("RFC") findings. Pl.'s Br. Supp. Mot. Summ. J. 4, 8, ECF No. 13 ("Pl.'s Br."). Plaintiff

---

[2] Page citations are to the administrative record that the Commissioner has filed with the Court.

2

argues there is a disconnect between the ALJ's accepting most of the medical opinion of the consultative examiner, Dr. Shawne Bryant, which included explicit cumulative time limits on plaintiff's ability to stand/walk and sit, and the RFC findings by the ALJ, which omit any such explicit cumulative time limits. *Id.* at 8.

Plaintiff avers that the omission of the cumulative time limits from the RFC, and why the omission was not harmless, is the "one legal argument raised in this case." *Id.* at 4, 8. As plaintiff is not challenging any other finding by the ALJ, the facts set forth below focus primarily on the findings related to any cumulative limits on standing/walking and sitting suggested by Dr. Bryant.

### A. *Background Information*

Plaintiff claims she became disabled on September 21, 2018. R. 157. As a result of her disability, plaintiff claims she spends most of her time doing crossword puzzles, watching television, sitting with her grandchildren, making quick meals, doing laundry and dishes, shopping, and playing games such as Uno. R. 203–07. By comparison, she claims that, before the onset of her disability, she had more of a social life, played basketball, and spent time running and jumping with her grandkids. R. 204. Plaintiff also claims that her disability prevents her from walking more than three blocks before needing to stop and rest for fifteen minutes. R. 208. She also claims that she cannot do yard work because of arthritis in her right knee, an inability to kneel or squat, and very bad bodyaches. R. 206. She also writes that she rarely goes outside because she fears she will fall, particularly when alone, and that she does not like going out alone "because of my leg weakness." *Id.*

Plaintiff was treated by at least seven different facilities in 2018 concerning her fibromyalgia and other disorders, R. 245–534, and was further treated in at least three facilities in 2019 and 2020, R. 543–60, 562–682. The state agency reviewed available records from these

3

facilities as part of plaintiff's initial disability determination on January 25, 2019, R. 67–68, and on reconsideration on May 9, 2019, R. 79–82. As part of the reconsideration process, plaintiff was sent for a consultative examination with Dr. Bryant, on April 27, 2019. R. 535–41.

**B.**     ***The Consultative Examination by Dr. Bryant***

As part of the consultative examination, Dr. Bryant reviewed plaintiff's medical history, including plaintiff's statement that she is "able to sit 30 minutes at a time, [and] stand and walk 20 minutes at a time," conducted a physical and neurological examination, gave a diagnosis of plaintiff's condition, and provided a functional assessment. *Id.* Based on his examination, Dr. Bryant diagnosed plaintiff as suffering from fibromyalgia, right knee osteoarthritis with knee pain, obesity, and left foot pain "post left foot surgery with placement of ankle hardware." R. 538.

In assessing plaintiff's functionality, Dr. Bryant concluded that, due to plaintiff's obesity and multi-joint pain, plaintiff could walk twenty minutes at a time and up to "two to three hours in an eight-hour day with normal breaks," could stand for twenty minutes at a time and up to "two to three hours in an eight-hour day with normal breaks," and could sit for thirty minutes at a time and up to "six hours daily in an eight-hour day with normal breaks." *Id.* Dr. Bryant also concluded that plaintiff could lift and carry 15 pounds frequently and 25 pounds occasionally, that she could perform manipulative maneuvers, "occasionally limited due to multi-joint pain," that she would be able to bend and stoop occasionally, and that she may benefit from using a cane for long-distance and ambulation on uneven surfaces. R. 538–39.

However, the state agency examiner, on reconsideration, concluded that Dr. Bryant's findings overestimated the severity of plaintiff's restrictions. R. 87. Therefore, the state agency affirmed its previous determination that plaintiff was not disabled. R. 88–89.

4

Plaintiff subsequently requested a hearing by an ALJ, R. 104–05, leading to the hearing on May 11, 2020.

## C. *Hearing Testimony by the Vocational Expert Brian Bierley*

Brian Bierley, a vocational expert ("VE"), testified at the May 11, 2020, hearing before the ALJ. R. 58–64. He identified the plaintiff's past relevant work as that of a mental health aide, which is defined as a medium exertion and semi-skilled position, but which VE Bierley found the plaintiff performed as a heavy exertion occupation, based on plaintiff's testimony. R. 59. The ALJ asked VE Bierley about six hypothetical RFCs. During the first hypothetical, VE Bierley was asked about "an individual in the age range of 49 to 50 years old with a GED, and the same past work as the claimant . . . [who] can only occasionally crouch and crawl." *Id.* VE Bierley testified that such a person could not perform plaintiff's past relevant work but could perform two light exertion roles available in the national economy, an information clerk and a mail sorter, and that such a person could perform three sedentary jobs, those of final assembler, inspector, and table worker. R. 59–60.

In the second hypothetical, VE Bierley was asked:

> to add in the hypothetical one that the individual would need to be allowed to alternate between sitting and standing while at the workstation and on task so that they are standing for about 20 minutes at time and sitting for about 30 minutes at a time. In addition, the individual can occasionally stoop, crouch, and crawl. Cannot climb ladders, ropes or scaffolds. And can frequently perform all other postural activities.

R. 60. VE Bierley testified that such a person would still be able to work as an information clerk or as a plastics assembler, another light and unskilled position, as well as perform the previously identified sedentary positions. R. 60–61.

In the third and fourth hypotheticals, the ALJ added the limitations that the individual "must be allowed to use a cane to walk for long distances, or walk over uneven terrain" and that

5

the individual "could frequently but not constantly reach and handle bilaterally." R. 61. VE Bierley testified that the information clerk, plastics assembler, and sedentary occupations remained available. *Id.*

In response to the fifth hypothetical, which added a limitation that the individual could "only occasionally reach bilaterally," VE Bierley testified that no occupations remained available. R. 62.

In the sixth and final hypothetical, VE Bierley was asked about an individual who could "stand and walk a total of less than two hours and sit a total of two hours during an eight hour work day with customary breaks. And then the individual would be absent four days per month on average." *Id.* VE Bierley testified that either or both of those limitations preclude a person from any competitive employment in the national economy. *Id.*

VE Bierley also testified that his opinions were consistent with the Dictionary of Occupational Titles and the Selected Characteristics of Occupations, however, that for use of the cane, absenteeism, and alternating positions in the workplace, he was relying on his 30 plus years of experience to respond. R. 62–63.

Plaintiff's attorney only asked one question of VE Bierley about what an assembler would be doing when not handling on a frequent basis. R. 63–64. VE Bierley responded an assembler would be assembling and inspecting the item, as well as reaching and using fine manipulation fingering. *Id.*

### III. THE ALJ's DECISION

To evaluate plaintiff's claim of disability,[3] the ALJ followed the sequential five-step analysis set forth in the SSA's regulations. *See* 20 C.F.R. § 404.1520(a). Specifically, the ALJ

---

[3] To qualify for DIB, an individual must meet the insured status requirements of the Social Security

considered whether plaintiff: (1) was engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment that meets or medically equals a condition within the SSA's listing of official impairments; (4) had an impairment that prevents her from performing any past relevant work in light of her RFC; and (5) had an impairment that prevents her from engaging in any substantial gainful employment. R. 10–23.

The ALJ found that plaintiff met the insured requirements[4] of the Social Security Act through December 31, 2023, and had not engaged in substantial gainful activity since September 21, 2018, her alleged onset date of disability. R. 12.

At steps two and three, the ALJ found that plaintiff had the following severe impairments: (a) osteoarthritis; (b) back disorder; (c) left foot disorder; (d) right knee degenerative joint disease; (e) obesity; and (f) fibromyalgia. R. 12–14. The ALJ classified any additional impairments as non-severe, as "they did not exist for a continuous period of 12 months, are responsive to medication, do not require any significant medical treatment, or do not result in any continuous exertional or nonexertional functional limitations," or because they "do not cause more than minimal functional limitations, and therefore are non-severe." R. 13. The ALJ further determined that plaintiff's severe impairments, either singly or in combination (along with her other

---

Act, be under age 65, file an application, and be under a "disability" as defined in the Act. "Disability" is defined, for the purpose of obtaining disability benefits, "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To meet this definition, the claimant must have a "severe impairment" making it impossible to do previous work or any other substantial gainful activity that exists in the national economy. *Id.*

[4] In order to qualify for DIB, an individual must also establish a disability that commenced on or before the last day in which that individual met the insured status requirements of the Social Security Act. *See* 42 U.S.C. § 423(a), (c); 20 C.F.R. § 404.131(b).

conditions), failed to meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, as required for a finding of disability at step three. R. 14–16.

Although the ALJ did not explicitly include Dr. Bryant's cumulative limits on standing/walking or sitting in the RFC, she found his opinion "generally persuasive except for the limitations that state the claimant can only occasionally perform limited manipulative maneuvers." R. 20. Specifically, the ALJ stated in her discussion of Dr. Bryant's opinion that:

> Dr. Bryant limited the claimant to standing and/or walking for 20 minutes at a time and for two to three hours total during an eight-hour day, sitting for 30 minutes at a time and for six hours total during an eight-hour day, lifting 15 pounds frequently and 25 pounds occasionally, occasionally performing manipulative maneuvers due to multi joint pain, and occasionally bending and stooping. The undersigned concurs with the majority of the limitations provided because they are consistent with the evidence of record and exam findings. However, the undersigned finds the manipulative limitations to be inconsistent with generally normal upper extremity strength and more consistent with only mild deficits at worst. Because the majority of Dr. Bryant's opinion is consistent with the evidence of record, this opinion is generally persuasive.

R. 21 (internal citations omitted).

The ALJ found that plaintiff possessed the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), subject to the limitations that:

> [T]he claimant must be allowed to alternate between sitting and standing, while at work station and on task, with standing for 20 minutes at a time and sitting for 30 minutes at a time. She can occasionally stoop, crouch and crawl but she cannot climb ladders, ropes, or scaffolds. She can frequently perform all other postural activities. She must be allowed to use a cane for walking long distances or walking on uneven terrain. She can frequently reach and handle bilaterally.

R. 16.

At step four, based upon this RFC, the ALJ found that plaintiff could not resume working as a mental health aide. R. 22. Finally, at step five, and having considered the VE's testimony and plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs

8

that exist in significant numbers in the national economy which plaintiff could perform, specifically, the jobs of information clerk and plastics assembler. R. 22–23.

Accordingly, the ALJ concluded plaintiff was not disabled from September 21, 2018, through the date of decision, June 2, 2020. R. 23.

## IV. STANDARD OF REVIEW

In reviewing a Social Security disability decision, the Court is limited to determining whether the Commissioner applied the proper legal standard in evaluating the evidence and whether substantial evidence in the record supports the decision to deny benefits. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (noting the substantial evidence standard is "more than a mere scintilla," but "is not high").

When reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589; *Hays*, 907 F.2d at 1456. "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ).'" *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was

9

reached by means of an improper standard or misapplication of the law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)). Thus, reversing the denial of benefits is appropriate only if either (a) the record is devoid of substantial evidence supporting the ALJ's determination, or (b) the ALJ made an error of law. *Coffman*, 829 F.2d at 517.

V. **ANALYSIS**

**The ALJ provided a logical bridge between the RFC and Dr. Bryant's opinion when considering the cumulative limit on standing inherent in the RFC from the limitation requiring alternating standing and sitting.**

A. *Plaintiff argues that the ALJ failed to build an accurate and logical bridge between Dr. Bryant's opinion and the RFC.*

Plaintiff argues that the ALJ failed to properly weigh the available medical evidence and build an "accurate and logical bridge" between Dr. Bryant's opinion and the RFC when the ALJ stated she agreed with Dr. Bryant's opinion on plaintiff's limitations, except for his opinion on manipulative maneuvers, but failed to include Dr. Bryant's cumulative limitation on standing and/or walking in the RFC or present it to the VE. Pl.'s Br. 7–9. Since the ALJ did not explain why she "obviously disagree[d] with this critical part of Dr. Bryant's opinion," she failed to build a logical bridge between the RFC and Dr. Bryant's opinion. Pl.'s Reply Br. 2, ECF No. 16.

Plaintiff argues this failure is not harmless because a standing/walking limitation of two to three hours is more consistent with a sedentary RFC, which requires only occasional standing or walking, that is, no more than 2.67 hours of standing or walking. *Id.* at 9–10 (citing 20 C.F.R. § 404.1567(a); Social Security Ruling 83-10, 1983 WL 31251 (Jan. 1, 1983)). While plaintiff concedes that including cumulative limits of two to three hours on standing/walking in the RFC would not "axiomatically" result in a sedentary finding, plaintiff argues that this limitation should have been put to VE Bierley. *Id.* Plaintiff notes that VE Bierley was only asked about cumulative

10

limits on standing/walking in hypothetical six, and therefore had to assume that the previous hypotheticals for light work presumed an ability to stand and/or walk for six hours in an eight-hour workday. *Id.* at 9–10 nn.2–3. Plaintiff asserts that had VE Bierley been asked at hypothetical five about these cumulative standing/walking limits, he might have opined that such a person was limited to sedentary work. *Id.* at 10. As plaintiff turned 50 on July 3, 2019, meaning that she is a person "closely approaching advanced age," plaintiff argues that application of Grid Rule 201.14 would have resulted in a finding of disabled if plaintiff possessed no transferable skills to sedentary jobs. *Id.* Plaintiff closes by arguing that the ALJ's decision cannot be defended on the grounds that the ALJ's RFC was ultimately supported by other substantial evidence, as this would not be based on the ALJ's actual findings and rationale. *Id.* at 11.

### B. *The Commissioner argues there is no disconnect between the ALJ's findings and the RFC.*

The Commissioner argues that there is no disconnect in the ALJ's decision because the ALJ accounted for Dr. Bryant's cumulative limits in the RFC, which the Commissioner emphasizes is the most the plaintiff could do in a work setting despite her limitations. Mem. Supp. Def.'s Mot. Summ. J. Opp'n Pl.'s Mot. Summ. J. 1–2, 7–9, ECF No. 15 ("Def.'s Mem"). Specifically, the ALJ concluded the plaintiff could perform "light work as defined in 20 C.F.R. § 404.1567(b) except that claimant must be allowed to alternate between sitting and standing, while at the work station and on task, with standing for 20 minutes at a time and sitting for 30 minutes at a time." *Id.* at 8 (quoting R. 16). The Commissioner argues that, when this ratio is applied across an eight-hour workday, plaintiff would only be standing, at most, forty percent of the day.[5] *Id.* at 8–9. Taking into account typical breaks, the Commissioner argues that this ratio

---

[5] 20 minutes of standing divided by the total time spent either standing or sitting of 50 minutes (20 minutes of standing plus 30 minutes of sitting), would mean a person would stand 40 % of the day

11

is entirely consistent with Dr. Bryant's cumulative time limits on standing/walking.[6] *Id.* at 9. The Commissioner also argues that the ALJ correctly relied on VE Bierley to find that plaintiff was capable of performing a reduced range of light work, and did not need to apply the Grid Rules and find plaintiff was only capable of sedentary work. *Id.* at 9–10. The Commissioner argues that the definition of sedentary work only requires standing or walking for no more than two hours in an eight-hour workday, and that light jobs are mostly differentiated from sedentary ones based on the weightlifting requirements. *Id.* at 10. To the extent that plaintiff contends that the ALJ had to adopt Dr. Bryant's report verbatim, the Commissioner argues that regulations forbid such deference. *Id.* at 11 (citing 20 C.F.R. §§ 404.1520c(a); 404.1545(a)(3)). Finally, the Commissioner argues that the ALJ only needed to provide enough of a logical bridge that the pathway to her conclusion is reasonably discernable and permits "meaningful judicial review," but does not need to include an "elaborate or detailed explanation." *Id.* The Commissioner argues that the ALJ's path here is reasonably discernable—she was persuaded that plaintiff has difficulties with standing, walking, and sitting, and adopted an RFC that "reasonably accounts" for these difficulties. *Id.*

C. *The necessary implications of the ALJ's findings show an accurate and logical bridge between her treatment of Dr. Bryant's opinion and the RFC.*

The heart of plaintiff's objection is that the ALJ did not say she disagreed with Dr. Bryant's cumulative limitations on plaintiff's standing/walking and sitting, yet never included such limitations in a relevant hypothetical to VE Bierley or in the RFC. Pl.'s Br. 8–9, 11. Failure to

---

and sit 60% of the day (20 minutes sitting / 50 minutes sitting and standing = 0.40 or 40%).

[6] The Commissioner also notes that Dr. Bryant's report includes a separate opinion that plaintiff could stand and walk two to three hours a day each. Def.'s Mem. 9. However, since the ALJ reads Dr. Bryant's opinion as concluding that plaintiff could cumulatively walk and stand two to three hours in an eight-hour workday, R. 21, the Court will do the same.

12

build an "accurate and logical bridge" between the "evidence the ALJ found credible and why, and specific application of pertinent legal requirements to the record evidence" precludes effective judicial review and is grounds for remanding to the ALJ for further findings. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotation and citation omitted). However, a logical bridge does not need to explain every factor in how every piece of evidence was weighed by the ALJ. *See Hutzell v. Comm'r of Soc. Sec.*, No. 8:19cv2361, 2020 WL 3064772, at *11 (D.S.C. May 14, 2020). An ALJ's decision need not be a "'model of analytic precision,'" but will be upheld if the ALJ's decision "'path may reasonably be discerned.'" *See Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 350 (4th Cir. 2001) (first quoting *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995); then quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286 (1974)).

The ALJ stated that she found Dr. Bryant's opinion "generally persuasive" except for the limitations on manipulative maneuvers, as plaintiff argues. Pl.'s Br. 8–9; R. 20. Further, the ALJ includes the standing/walking cumulative time limitation in her list of "the majority of the limitations provided" by Dr. Bryant with which she agreed. R. 21.

However, plaintiff overlooks the fact that the ALJ's opinion and questioning of VE Bierley necessarily included some cumulative limitations on plaintiff's standing/walking during an eight-hour workday. Specifically, the ALJ found that plaintiff, "must be allowed to alternate between sitting and standing while at work station and on task, with standing for 20 minutes at a time and sitting for 30 minutes at a time." R. 16. In other words, the ALJ found that in every 50-minute period while at her workstation and on task, plaintiff cannot stand more than 20 minutes, that is, she cannot stand more than 40 percent of the time while working.

13

This limitation was also reflected in the ALJ's questioning of VE Bierley in hypothetical two, when the ALJ added the limitation that an individual with the characteristics of the defendant "would need to be allowed to alternate between sitting and standing while at the work station and on task so that they are standing for about 20 minutes at a time and sitting for about 30 minutes at a time." R. 60–61. This limitation was carried forward in hypotheticals three, four, and five, in which the ALJ only added additional limitations but did not modify any of the existing limitations. R. 61–62. It was only in hypothetical six that the ALJ asked about conditions inconsistent with this limitation and included explicit cumulative limits, namely that the hypothetical individual be able to "stand and walk a total of less than two hours and sit a total of two hours during an eight hour work day with customary breaks." R. 62. However, the record shows, and plaintiff agrees, that the ALJ's "ultimate RFC finding was a combination of the first four hypotheticals." Pl.'s Br. 6; R. 14.

At first glance, this forty percent standing limitation would appear to be a three-hour and twelve-minute cumulative limit on standing in an eight-hour workday,[7] exceeding Dr. Bryant's cumulative limit of two to three hours of standing/walking in an eight-hour workday. However, the ALJ's limitation on alternating standing and sitting only applied while plaintiff is "at [her] work station and on task," and thus does not include the time when plaintiff is on a break. R. 16. Notably, this is also the same phrasing that was put to VE Bierley by the ALJ in hypothetical two, "that the individual would need to be allowed to alternate between sitting and standing while at the *workstation and on task* so that they are standing for about 20 minutes at time and sitting for

---

[7] 20 minutes of standing divided by 50 minutes of working (20 minutes of standing plus 30 minutes of sitting) = 0.40 or 40%. 8 hours in a workday x 0.40 = 3.20 hours. 0.20 hours x 60 minutes per hour = 12 minutes. Therefore, standing 40% of an eight-hour workday would be standing for 3 hours and 12 minutes.

14

about 30 minutes at a time." R. 60 (emphasis added). This shows that both VE Bierley and the ALJ understood there are some breaks in the eight-hour workday.

A Social Security Ruling, which informs and binds the actions of all SSA components, *see* 20 C.F.R. § 402.35(b)(1), notes that an eight-hour workday includes "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." *See* Social Security Ruling 96-9p, 1996 WL 374185, at *6 ("SSR 96-9p"). The ruling also refers to these as "scheduled breaks and a lunch period," and notes that these are commonly used to accommodate an employee's need to alternate between sitting and standing. *Id.* at 7. Although the length of these breaks is not defined in the ruling, caselaw and VE testimony in other cases suggests that these "normal breaks," also called "customary breaks," are breaks that total sixty minutes in an eight-hour workday. *Wesley v. Kijakazi*, No. 1:20cv364, 2021 WL 4129234, at *1 (M.D.N.C. Sept. 9, 2021) (citing to an ALJ's RFC defining normal breaks "as a 15-minute morning and afternoon break and a 30-minute lunch break"), *report & recommendation adopted,* slip op. (M.D.N.C. Oct. 14, 2021); *see also Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017) (noting that "[t]he VE testified that . . . a typical employee is allowed an hour of break time, [which] time is broken up into two fifteen-minute breaks and one thirty-minute break"); *Wright v. Colvin*, 131 F. Supp. 3d 509, 513 (E.D.N.C. 2015) (noting that where claimant "need[ed] unscheduled breaks for ten minutes every one to two hours, . . [t]he vocational expert stated that an individual who required more [than] two fifteen-minute breaks and a half-hour lunch break would not be able to sustain gainful work activity."); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (finding that omitting reference to "normal and meal breaks every two hours" in questioning a VE is harmless, since these breaks are normal and assumed in most jobs, including here where the ALJ found the claimant had the RFC for light work). The SSA considers these breaks to be part of the eight-hour

workday, and not in addition to it. *Wesley*, 2021 WL 4129234, at *5, n.7 (noting that an RFC limitation that plaintiff needed to be off task 10 percent of the time either applied to the "full, eight-hour workday" inclusive of normal breaks or to the "seven hours of work time exclusive of normal breaks"); *Harvey v. Berryhill*, No. 1:16cv574, 2017 WL 943946, at *5 (M.D.N.C. Mar. 9, 2017) (concluding that standing and walking "totaling seven hours . . . would represent standing and/or walking for the entire work day, factoring in 60 minutes of standard breaks"), *report & recommendation adopted*, slip op. (M.D.N.C. Mar. 23, 2017); *Williams v. Comm'r of Soc. Sec.*, 805 F. App'x 692, 694–95 (9th Cir. 2020) (noting the need for 15-minute breaks after every two hours of work is not an additional limitation or restriction on the ability to work and that such breaks "are contemplated by the SSA as part of a normal workday schedule" citing to SSR 96-9p).

Given a total breaktime of one hour, plaintiff would be at her workstation and on task for seven hours in an eight-hour workday. Based on the earlier forty percent time standing while working calculation, described above, the plaintiff would spend two hours and forty-eight minutes standing in an eight-hour workday.[8] This is consistent with Dr. Bryant's two to three hour cumulative limitation on standing, which itself assumed plaintiff would work "an eight-hour day with *normal breaks*." R. 538. (emphasis added).

Thus, there is a logical bridge between the ALJ's acceptance of Dr. Bryant's opinion and the RFC, which is supported by substantial evidence in the record.

---

[8] 7 hours at the workstation and on task x 40% = 2.80 hours of standing while at the workstation and on task. 0.80 hours x 60 minutes = 48 minutes. Therefore, spending 40% of a 7-hour period standing is equal to standing for 2 hours and 48 minutes.

## VI. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that plaintiff's motion for summary judgment (ECF No. 12) be **DENIED**, the Commissioner's motion for summary judgment (ECF No. 14) be **GRANTED**.

## VII. **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 22, 2021